**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_RENATA BOJIC (MIJANOVIC)_
_____

*FILED*
*APR 2 3 2018* Revised 07/07 WDNY
*MARY C. LOEWENGUTH, CLERK*
*WESTERN DISTRICT OF NY*

Name(s) of Plaintiff or Plaintiffs

**Jury Trial Demanded: Yes____ No _X_**

-vs-

_BRYANT & STRATTON COLLEGE_
_KEVIN MUSE - DIRECTOR OF_
_ADMISSIONS_
_____
Name of Defendant or Defendants

**DISCRIMINATION COMPLAINT**

~~18~~ -CV- _CV 478 W_

You should attach a copy of your **original Equal Employment Opportunity Commission (EEOC) complaint**, a copy of the Equal Employment Opportunity Commission **decision, AND** a copy of the **"Right to Sue"** letter you received from the EEOC to this complaint. Failure to do so may delay your case.
**_Note:_** _Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes._

This action is brought for discrimination in employment pursuant to *(check only those that apply)*:

_X_ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) (race, color, gender, religion, national origin).
   **NOTE**: In order to bring suit in federal district court under Title VII, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

_____ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub.L.No. 99-592, the Civil Rights Act of 1991, Pub.L.No. 102-166).
   **NOTE**: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you **must first file charges** with the Equal Employment Opportunity Commission.

_____ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub.L.No. 102-166).
   **NOTE**: In order to bring suit in federal district court under the Americans with Disabilities Act, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

**JURISDICTION** is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub.L.No. 102-166, and any related claims under New York law.

**In addition to the federal claims indicated above**, you may wish to include New York State claims, pursuant to 28 U.S.C. § 1367(a).

   X         New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status).

## PARTIES

1. My address is: 110 CHURCHCROFT LN #1
   WILLIAMSVILLE, NY 14221

   My telephone number is: 716-275-4017

2. The name of the employer(s), labor organization, employment agency, apprenticeship committee, state or local government agency who I believe discriminated against me is/are as follows:

   Name: BRYANT & STRATTON COLLEGE, INC. / KEVIN MUSE

   Number of employees: 150+ BUFFALO DOWNTOWN CAMPUS

   Address: 465 MAIN ST, FLOOR 4
   BUFFALO, NY 14203

3. (If different than the above), the name and/or the address of the defendant with whom I sought employment, was employed by, received my paycheck from or whom I believed also controlled the terms and conditions under which I were paid or worked. (For example, you worked for a subsidiary of a larger company and that larger company set personnel policies and issued you your paycheck).

   Name: N/A

   Address: _____

## CLAIMS

4. I was first employed by the defendant on (date): 3/27/2008

5.  As nearly as possible, the date when the first alleged discriminatory act occurred is: _____
    _____ SEPTEMBER 2016 _____

6.  As nearly as possible, the date(s) when subsequent acts of discrimination occurred (if any did): 12/25/2017
    4/17/2017
    THROUGOUT SEPTEMBER 2016 - APRIL 2017

7.  I believe that the defendant(s)

    a. _____        Are still committing these acts against me.
    b. _X___        Are not still committing these acts against me.
    (Complete this next item **only** if you checked "b" above)   The last discriminatory act against me occurred on (date) 4/25/2017
    _____

8.  (Complete this section **only** if you filed a complaint with the New York State Division of Human Rights)

    The date when I filed a complaint with the New York State Division of Human Rights is _____ 06/06/2017 _____
    _ (estimate the date, if necessary)

    I filed that complaint in (identify the city and state): BUFFALO, NY _____
    _____

    The Complaint Number was: 10188141 _____

9.  The New York State Human Rights Commission did ____✓____ /did not _____ issue a decision.  (**NOTE:** If it **did** issue a decision, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

10. The date (if necessary, estimate the date as accurately as possible) I filed charges with the Equal Employment Opportunity Commission (EEOC) regarding defendant's alleged discriminatory conduct is: _____

11. The Equal Employment Opportunity Commission did ____✓____ /did not _____ issue a decision.  (**NOTE:** If it **did** issue a decision, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

12. The Equal Employment Opportunity Commission issued the attached Notice of Right to Sue letter which I received on: _____.  (**NOTE:** If it

**did** issue a Right to Sue letter, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

13.   I am complaining in this action of the following types of actions by the defendants:

a.   _____   Failure to provide me with reasonable accommodations to the application process

b.   _____   Failure to employ me

c.   ___✗___   Termination of my employment

d.   _____   Failure to promote me

e.   _____   Failure to provide me with reasonable accommodations so I can perform the essential functions of my job

f.   ___✗___   Harassment on the basis of my sex

g.   _____   Harassment on the basis of unequal terms and conditions of my employment

h.   _____   Retaliation because I complained about discrimination or harassment directed toward me

i.   _____   Retaliation because I complained about discrimination or harassment directed toward others

j.   ___✗___   Other actions (please describe) RETALIATION BECAUSE I DISAGREED WITH NEW POLICIES THAT HE WAS IMPLEMENTING

14.   Defendant's conduct is discriminatory with respect to which of the following *(check all that apply)*:

a.   ___✗___ Race

b.   ___✗___ Color

c.   _____ Sex

d.   _____ Religion

e.   _____ National Origin

f.   ___✗___ Sexual Harassment

g.   _____ Age
_____ Date of birth

h.   ____ Disability
Are you incorrectly perceived as being disabled by your employer?
____ yes ____ no

15.   I believe that I was ___✓___/was not _____ **intentionally** discriminated against by the defendant(s).

4

16.   I believe that the defendant(s) is/are _____ is not/are not _✓_ still committing these acts
      against me.  (If you answer is that the acts are not still being committed, state when:
      _____ and why the defendant(s) stopped committing these acts against
      you: _____
      _____

17.   **A copy of the charge to the Equal Employment Opportunity Commission is attached
      to this complaint and is submitted as a brief statement of the facts of my claim.**
      (**NOTE**:  You **must** attach a copy of the **original complaint** you filed with the Equal
      Employment Opportunity Commission and a copy of the **Equal Employment
      Opportunity Commission affidavit** to this complaint; failure to do so will delay
      initiation of your case.)

18.   The Equal Employment Opportunity Commission *(check one)*:
      _____ **has not** issued a Right to sue letter
      _✓_ **has** issued a Right to sue letter, which I received on __01·27·2018__

19.   State here as briefly as possible the *facts* of your case.  Describe how each defendant is
      involved, including *dates* and *places*.  Do not give any legal arguments or cite any cases
      or statutes.  If you intend to allege a number of related claims, number and set forth each
      claim in a separate paragraph.  *(Use as much space as you need.  Attach extra sheets if
      necessary.)*

      ON 12·25·2016 · KEVIN MUSE PERSUADED ME ON A ONLINE DATING
      WEBSITE, HE WAS MY IMMEDIATE DIRECTOR AT THAT TIME.
      IN FEBRUARY 2017, AFTER HE FOUND OUT THAT I HAVE A BOYFRIEND,
      KEVIN MUSE STARTED TO GIVE LESS LEADS, LESS RESPONSIBILITIES,
      HE KEPT REMINDING ME HOW MUCH MONEY AM I MAKING & HOW I CAN'T
      MAKE THAT MUCH ANYWHERE ELSE.
      ON 4·17·17 — AFTER I HAVE EXPRESSED MY OPINION & DISAGREED WITH THE NEW
      POLICIES THAT KEVIN IMPLEMENTED KEVIN CAME TO MY OFFICE, CLOSED THE
      DOORS & REPRIMENDED ME STATING THAT HE NEEDS & WANTS ME TO SUPPORT
      HIM IN THE MEETINGS.
      PLEASE SEE ATTACHED DOCUMENTS FOR MORE INFORMATION.

## FOR LITIGANTS ALLEGING <u>AGE DISCRIMINATION</u>

20.   Since filing my charge of age discrimination with the Equal Employment Opportunity
      Commission regarding defendant's alleged discriminatory conduct
      __X__ 60 days or more have elapsed   _____ less than 60 days have elapsed

## FOR LITIGANTS ALLEGING AN AMERICANS WITH DISABILITIES ACT CLAIM

21.   I first disclosed my disability to my employer (or my employer first became aware of my
      disability on __N/A__

22.  The date on which I first asked my employer for reasonable accommodation of my disability is _____ *N/A* _____

_____

23.  The reasonable accommodations for my disability (if any) that my employer provided to me are: _____ *N/A* _____
_____
_____

___

24.  The reasonable accommodation provided to me by my employer were _____/were not _____ effective.  *N/A*

**WHEREFORE**, I respectfully request this Court to grant me such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

Dated: *04/22/2018* _____

Plaintiff's Signature

May 29, 2017

Kevin Muse, who is my immediate director has started working for Bryant & Stratton College in September of 2016. As soon as he got this position he has started to promise me a promotion, that he will make me the best admissions representative in the company, and within few weeks he also gave me a bigger office with a window. He was very interested in my personal life especially after he learned that I am getting divorced. He would say things like "I love your smile, I like the way you laugh-it's contangious. I wish I had you 9 years ago…"

Even though I am on a Senior level and not on a Master level for my position; he was spending majority of his time with me either in his or my office asking questions and to train him on the systems that we use, even though that was not part of my job description and especially because we have a Master representative who he should have been reaching out to before me.

On December 25, 2016, Kevin Muse has contacted me on a dating website "Zoosk". He has send me the following message "Hi how are you? You are gorgeous btw! How is your week going? I would love to chat with you!" As soon as I saw the message I got concerned and freaked out; changed my photos and whole bio, and blocked him so that he can't contact me again.

The next few days at work were very awkward as I wasn't sure if I should bring this situation up or just ignore it, and Kevin has been avoiding me the following two days to the point that he would even say "good morning". After he realized that I will not be saying anything about what happened, Kevin went back to act as he usually does.

Things have changed to worse after Kevin found out that I have a boyfriend (Kevin has seen him few times on campus). Kevin stopped giving me extra responsibilities and tasks, stop asking for my assistance in training, I have started receiving less and less leads (I have received the least amount of lead out of all reps even though I am the 2nd one on the seniority level). Every week on our one-on-one's he would mentioned how much money I am making and would make sure to remind me that I can't make that much money on any other college.

On April 17, 2017 at our team training I have expressed my opinion on the several things that we have started doing and changes that were made in the lead distribution and rotation; I disagreed on all of those and felt like I should say something because all the representatives were agreeing with me. Shortly after the meeting, Kevin came to my office and wanted to have one-on-one (even though those are done on Thursday's every week). I couldn't say no to him, he came in my office, closed the doors, and pulled his chair very close to mine. I felt very uncomfortable and have turned my chair so that the back of the chair was facing towards him to create at least some barrier between us. First, he reprimanded me about voicing my opinion in the meeting and told me that what he needs from me is to support him in these meetings. I told him that if I don't agree with what he is saying, that I can't support him. He then asked me if I trust him, I felt trapped so I said that I do. After that, he asked me to tell him what are the positive and negative things about working at Bryant & Stratton. He was the one writing everything down. Then he mentioned my salary again, and I finally told him that I have been with the company for over 9 years and that I earned every penny that I'm making. He did not like my answer.

On April 20, 2017, one of my leads who I have been working with since 2016 enrolled by another rep. Before making a big deal out of it, I went to doublecheck with our office manager- Mary Beth Brown and



she confirmed that the lead should have been mine. I asked her if she could talk to Kevin about it (she is the one who usually deals with these situations). After she spoke to him, she came to my office to tell me that the lead is not mine and that Kevin will come and talk to me about it. I asked her to tell him to please not come in that day to talk to me because I was too upset about the situation and wanted some time to pull myself together and weigh in the situation. After she told him that, Kevin rolled his eyes at her and said, "too bad".

Kevin did come to my office that same day and did not show respect for me as his employee. He asked if I had questions about the lead and I told him that I did not, and that I would like to talk about it the next day. He kept pushing and pressuring me to the point that I told him that if he doesn't stop that I will have to leave work early. He told me in a very stern voice that if I leave that he will see that as my resignation.

The following day Friday and Monday Kevin has been avoiding me and not communicating with me yet again. On April 25, 2017, I was called in the Campus Director's office- Marvel Ross-Jones; where Kevin Muse, and HR Manager Lori Martynowicz were waiting for me.

Campus Director- Marvel Ross-Jones pretty much told me that I am being too negative and that my attitude is reflecting on the team (both statements can't be further from the truth). She also said that I am very unhappy working at Bryant & Stratton College and as a proof she handed me the list of the things that I told in confidence to Kevin Muse when he asked me to list negative and positive things about Bryant & Stratton College. Kevin said that I told him that I was "beyond bitter" which are the words that I never use in my everyday conversations. He kept pushing and saying that I said those words to which I just said that obviously his word weighs in more than mine...

After going back and forth several times, Marvel Ross-Jones finally said that she is willing to pay me my salary for the rest of the month (3 days), pro-rated vacation time and to write down that it was a "mutual agreement" so that I could collect unemployment benefits. I asked her what my other option was; she said that she could just fire me instead.

Being that I was set-up and pushed in the corner, I had no other choice but to sign the "mutual agreement" as I had to think about providing for my daughter. I was also moving to an apartment out of my parents' house where I was living while going through the divorce, that same week, and Kevin was aware of that fact as well.

In addition to all of the above, I was also the only white admissions representative at Buffalo downtown campus; the rest of the representatives are African-American; including campus director Marvel Ross-Jones and Director of Admissions- Kevin Muse.  Another admissions representative who is African-American (Fayvoyan Mosley) was reprimanded three weeks before me for basically same thing: she was told that she is very negative and the one who is starting gossips and rumors and is negatively affecting the team. That representative is still employed, while I was let go.

*1*

July 13, 2017

Ms. Debbie S. Kent

Regional Director

NYS Division of Human Rights

Re: Renata Bojic v. Bryant & Stratton College, Inc., Kevin Muse, Director of Admissions

Case No. 10188141

# REBUTTAL

Response to Statement of Relevant Facts:

Mr. Muse has said that I told him on one-on-one from 09/06/2016 that I was "disgruntled" which is not true. Also, I have never said that I had scheduling issues, because the former Directors of Admissions have been flexible with scheduling. After Ed Perez left the company as Director of Admissions, Crystal Morgan took over his role. I was on disability for several months, and when I came back Crystal wanted to meet with me as she did not have a chance to do so before. After the meeting, she admitted to me that she was almost afraid to meet with me because I was presented to her as a very disgruntled employee by Mike Mariani and Marvel Ross-Jones, because Ed Perez promised me a position of a Master Rep (and was fired on the day that I was supposed to be promoted). Crystal Morgan then admitted to me that she did not see the reason why they would present me in that way and that she was happy to have me on her team.

On Mr. Muse's Exhibit F it clearly states that I love my job and that I have invested a lot of years into the company.

Changes that Mr. Muse made to the Admissions policy have looked fine on the paper, but once we tried to implement them in practice they did show that there were too many grey areas for them to be effective. That is where I realized that those changes might not be positive for the team and I did express my opinion regarding those policies at our team meeting. Being with the admissions team of Bryant & Stratton College for 9 years gave me the unique understanding of the leads, amount of work, effort, and time that each representative puts into each lead.

My knowledge of the CRM system was more advanced than the other reps in our department, however, the real expert and to "go to" person for anything relating to CRM is our office manager Mary Beth Brown. Mr. Muse was aware of that, but instead he still decided to come to me for help with CRM, and asked me to do the training on it even though I didn't feel quite comfortable doing it, because I did not know everything about the CRM system. He also suggested to me to ask for help from a Director of Admissions at our Orchard Park location, Lilliana Mateo because she "knew a lot of the tricks" within CRM.

It was not me who asked to do the training on the Emotional Intelligence, rather, it was Mr. Muse's suggestion when he saw that I had that book in my office. After I did the training, I did ask Mr. Muse if I

II

could do the same training for all 3 campuses at one of our training meetings. He said that he will think about it and let me know. I never received an answer.

I did not resign from my position, rather, I was put in the spot and given 2 options; to signed the mutual agreement or to be fired. My performance was never brought up in the meeting that led to my "resignation". Dr. Marvel Ross- Jones was lingering on the facts that were brought to her by Mr. Muse and there were many of them that were not true. For example, I never said that I was "beyond bitter" and that I "didn't have time to look for another job". Those were words that were written by Mr. Muse on the paper that he presented to Dr. Marvel Ross-Jones. In addition, I was never unhappy or with an attitude towards students and/or other employees. Even though, I had several challenges on a personal level, I was always professional and customer service oriented towards students and employees.

Mr. Muse made sure to mention my salary at almost every one-on-one meeting with me. He would also ask me "You do realize that you will not be able to make this much money anywhere else?"

At the time of me working for the Bryant & Stratton College admissions representative team of Buffalo campus consisted of total of 7 reps, out of which 6 were African- American, and 1 Caucasian (Myself). The whole Admissions department consisted of total of 13 employees, out of which 10 were African-American, and 3 Caucasian with 1 person splitting her time between Buffalo & Orchard Park Campus, and 1 person spending majority of his time between Amherst & Orchard Park campus.

My performance for January 2017 semester was strongly affected by me being on disability during the summer and therefore lack of opportunity to build my lead bank to reach my January goal. I have missed January goal by 7 FTE. Mr. Muse was aware of the situation from that summer when I was on disability.

My performance for May 2017 semester was on track to hit my goal, even though I only received 57 leads total for the whole semester, which is extremely low and nowhere close to what I was supposed to receive. Other reps in department have received substantially more leads. At the time of my "resignation" I only needed to enroll 4 FTE to reach my goal for the semester.

I did not agree with the way that we were obtaining and classifying referrals with the goal of winning the competition. Also, there were several instances where reps were told by Mr. Muse to enroll the student even though they did not meet the College admissions requirements. One example is student by the name of Jenny Cruze, who has tried to enroll to Bryant & Stratton College on numerous occasions during the past few years, but was unable to do so because she did not graduate from High School. She applied again for the May 2017 semester and Mr. Muse was insisting on enrolling her even though Adrian McQueen –Master Rep, Mary Beth Brown- Office Manager and myself told him that we are familiar with Jenny Cruz and her situation, and that she doesn't have High School diploma nor her GED. Mr. Muse ignored us and told me that she will be ok because Jenny told him that she has a copy of her High School diploma at home and will send him a photo of it. Her HS diploma was forged.

In Exhibit P, Mr. Muse is asking Dr. Marvel Ross- Jones to put me on the performance improvement plan and to give me a written warring. Instead of that I was force to resigned.

Dr. Ross- Jones did not say that I was the only one acting unprofessionally (she nor any other employees have not seen me act unprofessional), and only one with the list of the reasons why I didn't like the college.  The only reason why that list was made is because Mr. Muse asked me to give him those reasons, and he was the one writing them down. I never signed my name on that paper. Dr. Marvel Ros-Jones never took time to speak to me herself or to ask how is the enrollment going on her own.



However, she always made sure to stop by to several other reps who were African-American and belonged to the church where she is a pastor. If I was so unhappy, disgruntled, and unprofessional I would think that she and other managers/employees/students would notice that. Obviously, that was not the case as the only person complying about me was Mr. Muse.

Response to College's Response to Verified Complaint:

1. Mr. Muse in fact did promised me the Master Position and have said on numerous occasions how my potential in amazing and unlimited. College was aware of the promise of the promotion from the 2 prior Directors of Admission; Phil Struebel and Ed Perez.

   I was not moved to either office by Dr. Ross-Jones; I was moved to the first office on the suggestion of Ed Perez, and to the larger office on the suggestion of Mr. Muse. If Mr. Muse's and Dr. Ros-Jones's statements on the lack of my performance and unprofessional attitude were truthful, I should have been left to work in the cubicle where I spend the past 8 years of working for Bryant & Stratton.

   Mr. Muse was not in the position to see any of the documentation from my divorcee (to my knowledge) because I never left it on the desk nor face facing up. Mr. Muse also never mention college or the human resource department as the means of asking for assistance for me or help. Instead, he said on numerous occasions "If there is anything *I* can do to help you, please let me know."

   My attitude on the phone and with students was always professional, positive, happy and with a smile on my face. Mr. Muse did tell me that he "loves my smile, the way I laugh" and the fact that I can make "jokes that are actually funny."

2. Mr. Muse was indeed spending large amount of time in my office and other reps have noticed it. I did not ask him to come to my office to help me, unless I had a student I wanted him to meet and introduce himself to help get student enrolled and feel welcomed, which was rare.

3. As you can see in the attached Exhibit A, Mr. Muse did in fact contacted me on Zoosk on December 25, 2016. As soon as I realized what he has done, I have blocked him immediately and changed all my info and photos on the profile. Had he not contacted me, how would I know what the message is that he sends to all the profiles that he likes- per his statement?
   Per Mr. Muse's Exhibit R; all the women are Caucasian and besides one profile, Mr. Muse has only provided the profiles that he has contacted ***after*** this complaint against him was filed/received.
   The next few days he did act differently towards me, but after learning that I will not bring that situation up, things did go back to normal.
   I don't remember sending a request to Mr. Muse on LinkedIn, however, LinkedIn is a business professional networking community and not a dating website.
   We did the secret Santa for our Admissions department, and I have drawn Mr. Muse's name and therefore I gave him a phone case of Michael Jordan which I ordered on Amazon for $7. Had we not done the secret Santa, I would have never given Mr. Muse a Christmas gift.

4. The doors of my office were only closed while I was on lunch, weather I stayed and had my lunch in an office or went out of the building. Mr. Muse did allow me to close my doors and

even suggested to put the sign on the doors when I am making outgoing calls to students and leads. He seemed to be pleased when he saw that I am taking his advice.

When it comes to leads, I did not complain about the number of transfer leads, but about the leads that are provided to the reps by the company. Even though I was on the projection to achieve my May 2017 goal, I still have received the least number of leads in the whole department.

We never discussed about how much money would I want or have to make to purchase a house, and his comments about my salary have become more often during the months of March and April 2017.

I never said that I hated making phone calls and that I did not like the job that I had; refer to Mr. Muse's Exhibit F.

5. Please refer to my statement from the original complaint as I stand by it. I was not able to see what Mr. Muse was writing down as his handwriting is very hard to read and the way the paper he was writing on was positioned.

   The reason why I did not complaint about the situation was because of the fear of retaliation. After I was forced to "resigned", HRC Lori Martynowicz stayed for a few minutes with me (after Mr. Muse left) while I was loading my belonging to my car and was visibly upset by what happened. She apologized to me and with the tears in her eyes said that she had no idea that this was happening and that she was called in the Dr. Ross-Jones's office in the morning and said to get the papers ready.

6. Please refer to my statement from the original complaint as I stand by it. Mr. Muse was forcing me to talk about the situation with the lead even though I asked him several times to give me some time to asset the situation and to calm down.

7. Please refer to my statement from the original complaint as I stand by it.

8. Please refer to my statement from the original complaint as I stand by it.


I am also attaching Exhibit B which contains txt messages from some of the employees after they have found out what happened on the day that I was forced to "resign". You can clearly see even from those messages that statements that were made against me by Mr. Muse were not truthful.


## DAMAGES

1. Lost wages since April 30, 2017. I am still in a search of a new job
2. Lost benefits; dental, 401K
3. Pain and suffering damages
4. Attorney fees


Renata Bojic

October 23, 2017

Ms. Debbie S. Kent

Regional Director

NYS Division of Human Rights

                    Re: Renata Bojic v. Bryant & Stratton College, Inc., Kevin Muse, Director of Admissions

                        Case No. 10188141

Response to the statements from Bryant & Stratton College dated October 16, 2017:

    #1. List of staff that was included was from January 2016 when Kevin Muse was not a Director of Admissions nor was he working for Bryant & Stratton College at that time. List of staff provided by Bryant & Stratton college included those who are at the management level as well as those who are not part of the Buffalo Campus Admissions Team.

        Lynn Becker- lives in Florida and has not been working at Buffalo Campus since 2016

        Kushal Bhardwaj- quit Bryant & Stratton College soon after I was forced to resign, stating that he did not like the way he was treated by Kevin Muse

        Kristen Cooper- was fired in January 2016

        Kevin Ernest- Management, no longer with College

        John Holtje- was not employed in the Admissions while I was an employee of Bryant & Stratton College

        Douglas Lewczyk- resigned before Kevin Muse was a Director of Admissions or employed by Bryant & Stratton College

        Crystal Morgan- Management, not stationed in Buffalo, NY but in Ohio and works at a System Level

        Nicholas Sarratori- was hired after I was forced to resign

        Jennifer Tyner- was hired after I was forced to resign

        Richard White- was employed with Bryant & Stratton College and resigned before Kevin Muse was a Director of Admissions and worked for Bryant & Stratton College

*** Statements that "Complainant and Mr. Perez were said to be very close with one another which included going out socially on multiple occasions to local restaurants and bars with their significant others" are not true and are only based on the gossip.

Statement that "Mr. Perez promised her to promote her to Assistant Director of Admissions" are invalid and not true as Buffalo Campus does not have a position of Assistant Director of Admissions.

Statement that "Complainant indicated to others that she had continued to keep in contact with him (Mr. Perez) and he would be bringing her with him to his next job" are invalid and not true.

In addition, neither one of these false statements made by Bryant & Stratton College bear any significance on the events that took place after Kevin Muse took a position of a Director of Admissions.

#2. In regard to the statements made about Fayvoyan Mosley, Kevin Muse had admitted that she was reprimanded and put on the Performance Improvement Plan.

During my over 9 years careers at Bryant & Stratton College, I have never been put on the Performance Improvement Plan, by neither of my Directors of Admission, including Kevin Muse. In addition, on the date of my forced resignation I only had to enroll 4 more students to reach my May 2017 goal.  My performance was not brought up as the reason for my forced resignation, rather it was my "negativity".

As for the Kevin Muse's statements that "Complainant explicitly stated in her on-on-one meeting with Mr. Muse on April 17, 2017 that she did not like the job or the College, was "beyond bitter", did not want to be at the College and was only at the College because she did not have time to look for anything else, she threatened to walk out and abandon her job on April 20, 2017 and she slammed the door on Mr. Muse on April 20,2017"; these statements are fabrication and I have already addressed them in the original complaint as well as my rebuttal from July 13, 2017.

#3. Nicholas Sarratori was hired after I was forced to resign. Has no bearing on what has transpired while I was employed by Bryant & Stratton College.

#5. The leads that were included in the evidence #7 are old leads that were either already under my name in the system, or have been assigned to other reps who were no longer with the College. The leads of those reps were distributed among all the reps who were employed by the College, and not just myself.

#6. Evidence #6 clearly shows that I have received the least amount of the leads that the College is required to provide to an Admissions Representative and are based on the Representative's seniority level and semester goal.  I have received only 67 leads vs. 80 ( Tot New Leads section of the report) that College was required to provide me. Kush B. for example has received 216 while he was required to receive only 35 because he was a new hire. In addition, my "Close %" was the highest of all the Admissions Reps at 68% while my goal was 65%, which clearly shows my ability as an Admissions Representative.

As you can see from the evidences and the statements that were provided by Bryant & Stratton College, Mr. Muse, and myself, there are numerous indicators that I was discriminated based on my gender and color of my skin. In addition, I have provided evidence that Mr. Muse has persuaded me on the online dating website while he was a Director of Admissions for Bryant & Stratton College and while I was employed by the College in his department. The fact that Mr. Muse denied that he persuaded me on



online dating website, prior to his knowledge of me possessing the evidence of such event, speaks volumes of his character and trustworthiness.

I hope that I have provided enough evidence so that this case can be brought to court, and justice can be served.


Sincerely,

Renata Bojic (Mijanovic)

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Renata Bojic<br>110 Churchcroft Lane<br>Williamsville, NY 14221 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2017-02837 | Holly M. Shabazz,<br>State & Local Program Manager | (212) 336-3643 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Kevin J. Berry,
District Director

Jan 23, 2018

*(Date Mailed)*

Enclosures(s)

cc:

Attn: Director of Human Resources
BRYANT & STRATTON COLLEGE, INC.
465 Main Street, Floor 4
Buffalo, NY 14203



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>RENATA BOJIC,<br><br>Complainant,<br><br>v.<br><br>BRYANT & STRATTON COLLEGE, INC., KEVIN MUSE, DIRECTOR OF ADMISSIONS,<br><br>Respondents. | DETERMINATION AND ORDER AFTER INVESTIGATION<br><br>Case No.<br>10188141 |

Federal Charge No. 16GB702837

On 6/6/2017, Renata Bojic filed a verified complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of race/color, sex in violation of N.Y. Exec. Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that the respondents have engaged in or are engaging in the unlawful discriminatory practice complained of. This determination is based on the following:

The record does not support complainant's allegations of sexual harassment. Complainant alleges her supervisor sexually harassed her by saying she had a "nice smile and laugh", visited her office more frequently than he did to others, giving her a larger office, and on December 25, 2016 sent her a comment on a dating website, of which they were both members. Complainant acknowledges she never made a complaint of sexual harassment, but says she feared retaliation. She states that she blocked him on the dating site, he avoided her for a brief time afterward, then resumed normal interaction. Respondent denies Muse knowingly sent a message to complainant on the dating site and states that many on the site use pseudonyms instead of their real names. Complainant acknowledges she did not make an internal complaint of sexual harassment either at the time of the occurrences or during her termination meeting.

The record shows complainant was terminated on April 25, 2017. Complainant believes it was based on her race and for refusing her supervisor's advances. Respondent provided a legitimate business reason; because complainant had a poor attitude and was not happy with her job which was affecting the team. The record supports respondent's reason and does not indicate this was a pretext for unlawful discrimination based on sexual harassment or race. The record shows that shortly after hire, Muse instituted a policy change regarding how leads were earned. Complainant acknowledges she disagreed with that policy. The evidence does not demonstrate that the policy was related to the sex, race or color of the employee, and complainant acknowledges respondent followed the policy. The record shows that on April 17, 2017 complainant expressed her disagreement with the policy during a team meeting. After the team meeting, Muse met with complainant in her office to discuss her attitude and behavior during the meeting. Complainant acknowledges she turned her chair so that her back was to Muse. An issue arose regarding leads on April 20, 2017 between complainant and another employee, which Muse attempted to resolve. Complainant acknowledges that Muse tried to discuss the matter with her but she told him she did not want to talk until she calmed down. She acknowledges she raised her voice. Respondent states complainant told Muse that he "makes [her] want to just walk out and quit" and he told her that, if she did, he would accept that as her resignation. The record shows Muse sent an April 21, 2017 email to Campus Director Marvel Ross-Jones explaining his meetings with complainant and asked she be given a written warning and put on a performance improvement plan. The record shows that Muse, Ross-Jones and Human Resources Coordinator Lori Martynowicz met with complainant on April 25, 2017 about the ongoing concerns about her negative attitude. During that meeting complainant was given the opportunity to resign or be terminated and complainant chose to resign. Complainant acknowledges in her rebuttal that, prior to Mr. Muse, at least the last two Directors viewed complainant as having a negative attitude and being a "disgruntled employee" because she felt she was being denied a promotion.

The record does not support complainant's allegation of race discrimination. The record shows that an African American female employee was counseled based on gossip and attitude during team meetings, but not terminated. Respondent indicates that she was not terminated because she was receptive during the meeting and agreed to change her behavior. The record shows Muse attempted to meet with and counsel complainant on more than one occasion, but each time he was met with inappropriate and disrespectful behavior. No other race discrimination allegations were made.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination. A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under Title VII of the Civil Rights Act of 1964. Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC). You have the right to request a review by EEOC of this action. To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated:   11-30-17
         Buffalo, New York

                              STATE DIVISION OF HUMAN RIGHTS


              By:   _Debbie S. Kent_____
                    Debbie S. Kent
                    Regional Director

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

RENATA BOJIC,
Complainant,

v.

BRYANT & STRATTON COLLEGE, INC., KEVIN
MUSE, DIRECTOR OF ADMISSIONS,
Respondents.

---

AFFIDAVIT OF SERVICE

Case No.
10188141

Federal Charge No. 16GB702837

STATE OF NEW YORK  )
                                         )  SS:
COUNTY OF ERIE       )

  Josephine O'Neill, being duly sworn, deposes and says, that he/she is over the age of 18 years; that he/she is employed by the New York State Division of Human Rights; that on December 1, 2017, he/she served the within DETERMINATION upon:

Complainant
Renata Bojic
110 Churchcroft Lane
Williamsville, NY 14221

Respondent
Bryant & Stratton College, Inc.
465 Main Street, Floor 4
Buffalo, NY 14203

Respondent
Kevin Muse, Director of Admissions
Bryant & Stratton College, Inc.
465 Main Street, Floor 4
Buffalo, NY 14203

Respondent Attorney
Tracie L. Lopardi, Esq.
Harris Beach Attorneys at Law
726 Exchange Street, Suite 1000
Buffalo, NY 14210

by personally placing true copies of the same, securely enclosed in postpaid wrappers in the post office box/depository under the exclusive care and custody of the United States Postal Service at 65 Court Street, Buffalo, New York.

Dated: December 1, 2017
Buffalo, New York

_Josephine O'Neill_
Josephine O'Neill
Secretary 1

Sworn before me this 1st day of December, 2017

_Beverly a Frescholtz_
Notary Public

BEVERLY A. FRESCHOLTZ
Notary Public, State of New York
No. 01FR6187237
Qualified in Erie County
My Commission Expires May 19, 2020



# Lipsitz Green Scime Cambria LLP

Attorneys at Law

42 Delaware Avenue, Suite 120, Buffalo, New York 14202-3924  **P** 716 849 1333  **F** 716 855 1580 (Not for Service)  www.lglaw.com

Paul J. Cambria, Jr. [1,5,5]
James T. Scime
Herbert L. Greenman
Michael Schiavone
Laraine Kelley
Richard P. Weisbeck, Jr.
Mark L. Stulmaker
Barry Nelson Covert
Robert L. Boreanaz
Thomas M. Mercure
John A. Collins
George E. Riedel, Jr. [2]
Michael P. Stuermer [3]
Jeffrey F. Reina
Cherie L. Peterson
Joseph J. Manna
William P. Moore
Thomas C. Burnham
Jonathan W. Brown [5]
Sharon M. Heim
Paul J. Cieslik
Gregory P. Krull
Robert E. Ziske
Patrick J. Mackey [4]
Matthew B. Morey
Max Humann [6]
Katherine A. Gillette
Lynn M. Bochenek
Joseph L. Guza
Emily H. O'Reilly [7]
Richard A. Maltese, Jr.
Justin D. Ginter
Erin E. McCampbell
Jeffrey B. Novak
Lucy M. Berkman [2]
Dale J. Bauman [2,7]
Micelle M. Ragusa
Melissa A. Murphy

OF COUNSEL
Patrick C. O'Reilly
Joseph J. Gumkowski

SPECIAL COUNSEL
Richard D. Furlong
Scott M. Schwartz
Diane M. Perri Roberts
Philip Scaffidi
Michael M. McDaniel

LICENSED WORKERS'
COMPENSATION
REPRESENTATIVE
Keith T. Williams
Patricia N. Lyman

[1] Also admitted in District of Columbia
[2] Also admitted in Florida
[3] Also admitted in California
[4] Also admitted in Illinois
[5] Also admitted in Pennsylvania
[6] Also admitted in Maryland
[7] Also admitted in New Jersey

May 22, 2017

PERSONAL AND CONFIDENTIAL

Renata Bojic

Re:      Consultation / Employment Matter

Dear Ms. Bojic:

You have contacted our office regarding questions involving one or more employment matters. We have agreed to meet with you in our offices for approximately 1 to 1½ hours to review your documents and discuss your matter. Before the conclusion of our office conference, we will provide you with our advice and recommendations. The fee for our legal services in connection with this consultation will be $300 and is payable before commencement of our office conference.

Please be advised that we have not agreed and will not perform any further legal services on your behalf after our office conference. If you would like to retain our firm for legal services regarding this or any other matter, then it will be necessary to enter into a separate retainer agreement, upon mutual acceptable terms and conditions. Thank you.

After reading over this Agreement, kindly sign your name where indicated on both copies and retain one copy for your records.

Very truly yours,

**Lipsitz Green Scime Cambria** LLP

*Robert L. Boreanaz*

RLB:lml

Writer's Extension:  343

| ACCEPTED | | $300.00 PAYMENT RECEIVED | |
|---|---|---|---|
| By: _____ | 05/22/17 | 5/22/17 | SB |
| RENATA BOJIC | Date | Date | Initials |